**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

**OPAL R. SLONE,
individually and as the
Administratrix of the Estate of
Jacquline Hudson,**

**and**

**THE ESTATE OF JACQULINE HUDSON**

**Plaintiffs,**

**vs.** **Case No.: 3:23-CV-00636**

**JEFFREY RACER, *et al.*** **HON. ROBERT C. CHAMBERS**

**Defendants.**

**PLAINTIFFS' COMBINED REPLY TO DEFENDANT JEFFERY RACER JR.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST ALL DEFENDANTS FOR NEGLIGENCE [DOC. 105] AND DEFENDANTS', CABELL COUNTY SHERIFF'S OFFICE, CHUCK ZERKLE AND CABELL COUNTY COMMISSION RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON NEGLIGENCE AGAINST DEFENDANT RACER (ECF NO. 90 & 91) [DOC. 108]**

COMES NOW the Plaintiff Opal R. Slone, individually and as the Administratrix of the Estate of Jacquline Hudson, by and through Tyler C. Haslam and Haslam Law Firm LLC and Kerry A. Nessel and Nessel Law Firm PLLC, and replies to Defendants' responses to her motion for summary judgment on the issue of his negligence as follows.

## I. INTRODUCTION

**"No man, I kil- I fucking killed her accidentally."** – Jeffery Racer, Jr., Dec. 30, 2022.

**"I didn't even see her in front of me."** - Jeffery Racer, Jr., Mar. 6, 2023

Racer's statements were part of the Internal Affairs investigation in this matter. *See* Internal Affairs Investigation Report of Investigation[1], Mar. 10, 2023, attached hereto as Exhibit A, at p. 5 (CCC000511) (emphasis added); Trs. of Stmt. of Jeffery Racer, Mar. 6, 2023, attached hereto as Exhibit B, at p. 10 (CCC000529) (emphasis added). The Internal Affairs investigation was finally produced in discovery **after** Plaintiffs filed their motions for summary judgment and conclusively establishes what Plaintiffs have asserted from the outset of this case.

Not only did Racer admit that he killed Laney Hudson "accidentally" on December 30, 2022, but he also indicated to West Virginia State Police Trooper Jonathon Johnson that he was "going too fast." *See* Ex. A, at p. 3 (CCC000509).[2] The Internal Affairs investigation also determined that Racer violated numerous Cabell County policies on December 30, 2022, including speeding in violation of state law and "operating his vehicle in an irresponsible manner." *Id.* at p. 6 (CCC000512).

---

[1] Racer's statement that night comes from the body worn camera ("BWC") footage of Patrolman Ronald Bradley of the Huntington (WV) Police Department. The file with the BWC footage is identified in the Internal Affairs report as "CCSD 23_0001" and it was produced to Det. Ana Piles, the officer who conducted the investigation, by Trooper Susan Clagg of the West Virginia State Police. Despite being requested in discovery, Defendants have not produced the actual BWC footage. The Internal Affairs investigation report was not produced by Defendants until August 30, 2024, which was after Plaintiffs filed the instant motion for summary judgment.

[2] The parties jointly agreed to remove the confidential designation from the Internal Affairs Investigation Report and the transcript of Jeff Racer's interview on September 11, 2024.

At the conclusion of this internal investigation, Deputy Jeffery Racer is believed to have violated the following sections of the Cabell County Sheriff's Office Administrative Rules and Regulations:

1. Based on the crash investigation conducted by the West Virginia State Police, it is determined that Deputy Racer was traveling at a median speed of 49 miles per hour in a 35-mile-per-hour speed zone when the crash occurred. Speeding is a misdemeanor crime in the State of West Virginia under West Virginia statute 17C-6-1. This is a violation of Cabell County Sheriff's Office Rules of Conduct and Behavior, 17-10, Subsection IV, Number 1. **Obedience to Laws**

2. Based on the interview conducted with Deputy Racer, he does not know what speed he was traveling when the crash occurred. The investigation conducted by the West Virginia State Police determined that Deputy Racer was traveling in his department-issued vehicle at a median speed of 49 miles per hour in a 35-mile-per-hour zone. This indicates that Deputy Racer was operating his vehicle in an irresponsible manner. This is a violation of Cabell County Sheriff's Office Rules of Conduct and Behavior, 17-10, Subsection IV, Number 28. **Department Vehicles.**

3. Based on the interview conducted with Deputy Racer, he admits to drinking an alcoholic beverage at a restaurant. Deputy Racer admits to leaving the restaurant and driving his

CONFIDENTIAL CCC000512

The primary issue presented in Plaintiffs' motion is Racer's negligence in striking Laney Hudson with his Cabell County patrol vehicle and causing her death. Racer spends more than half of his response, 12 of 20 pages, trying to craft a counterfactual narrative as to why he was not speeding [Doc. 105, at pp. 2-8], that Laney Hudson was intoxicated [Doc. 105, at pp. 8-11], and that Special Prosecutor Mark Sorsaia determined he was not negligent [Doc. 105, at p.12]. He also spends a paragraph going into the history of substance abuse issues of Plaintiff Opal Slone and other members of Laney's family. [Doc. 105, at pp. 10-11.] What Racer argues is either plainly factually incorrect (speed and violation of state statute), unsupported by competent expert testimony (that Laney Hudson was intoxicated at the time of her death and that her intoxication caused her to be struck by a speeding and inattentive Jeff Racer), or irrelevant (Mark Sorsaia's decision to not charge Jeff Racer criminally and the substance abuse issues of Laney's family members).

In attempting to alleviate any and all culpability and liability, Defendant Racer relies heavily on Mark Sorsaia's report. For example, on page 11 of his response [Doc. 106], Racer

argues he passed a field sobriety test and that his blood alcohol content (BAC) was 0.000. What Racer fails to inform the Court is he was not given a "field" sobriety test but was administered some form of testing at the West Virginia State Police barracks over four (4) hours after the incident. The testing certainly was not in the field and it is impossible to ascertain with it complies with the National Highway Traffic Safety Administration's Standard Field Sobriety Testing procedures. Relatedly, the trooper administering this test covered his body camera moments before Racer began the tasks that he was asked to perform. The trooper's BWC footage clearly fails to show the what actually happened to determine Racer's level of sobriety. As for the BAC test, it also was given over four (4) hours after Racer struck and killed Laney Hudson. Basically, after consuming alcohol with Hannah Giammarino, operating his Cabell County patrol vehicle "in an irresponsible manner," and causing the death of Laney Hudson, Racer was given an abundant amount of time to possibly sober up.

Racer's reliance on witness Steven Foster is further misguided, at best. Basically, Foster's perception of the events is countered by not only Racer himself, but also Richard McSorley (a fact witness all Defendants failed to address in their respective responses) and the Internal Affairs investigation completed by the Kanawha County Sheriff's Office. [*See* Sworn Stmt. of Richard McSorley, Doc. 88-2.] McSorley's sworn statement revolves around him witnessing Racer speeding, driving erratically, running red lights, and implementing his cruiser light bar for no impending emergency mere moments before Racer struck and killed Laney Hudson.

The County Defendants make similar statements regarding the evidence in their response, but without as much detail as Racer.

Defendants have not pointed to any admissible evidence to show that Racer was not negligent in order to defeat the motion for summary judgment. *Variety Stores, Inc. v. Wal-Mart*

*Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)) ("If the movant satisfies this showing, **the burden shifts to the nonmoving party to show a genuine issue of material fact for trial by offering 'sufficient proof in the form of admissible evidence.**'" (emphasis added)).

## II. Law & Argument

### a. The Factual Record is Clear That Racer Was Speeding at the Time He Struck Laney Hudson with His Cabell County Patrol Vehicle and Caused Her Death.

Defendants' arguments that Racer was not speeding at the time he struck Laney Hudson or, alternatively, that his speeding was reasonable under the circumstances are, at best, baffling.

The night Racer killed Laney Hudson he told Trooper Johnson that he was "going too fast." Ex. A, at p. 3 (CCC000509). Multiple eyewitness accounts the night of the collision state that Racer was speeding when he struck Laney Hudson. [Doc. 88-1, at pp. 137-38, p. 173.] The West Virginia State Police accident reconstruction completed by Trooper Sgt. R.A. Marsh determined that Racer was traveling between 47 and 55 miles per hour in a 35 MPH zone when he struck Laney Hudson. [Doc. 88-3, pp. 4-5.] Racer admitted that the speed limit was 35 MPH. The Internal Affairs Investigation determined both that Racer was speeding in violation of W. Va. Code § 17C-6-1 and that he was "operating his vehicle in an irresponsible manner" when he struck Laney Hudson. Ex. A, at p. 6 (CCC000512). Racer testified at deposition that he does not dispute the findings of the West Virginia State Police that he was speeding. [Doc. 88-1, at p. 138:5-9 (PAGEID# 794) ("Q. So you don't dispute that you were speeding, right? A. I'm not going to dispute or confirm."), p. 173:11-16 (PAGEID# 829) ("Q. And you're not going to dispute that you were speeding, right? A. I'm not going to dispute, but I'm not going to confirm that I was either.").]

Only Racer's counsel, and not Racer himself, contend that Racer was not speeding at the time of the collision.

Neither Racer nor the County Defendants have identified any expert witness who will opine that Racer's speed was at or below the legal limit of 35 MPH. Even the report of Mark Sorsaia that defendants rely upon to disclaim negligence determined that Racer's speed was in excess of the speed limit at the time he struck Laney Hudson. [Doc. 106-08, at p. 5.] The only conclusion to be drawn from the evidence is that Racer was speeding in excess of the posted limit when he struck Laney Hudson with his Cabell County patrol vehicle.

W. Va. Code § 17C-6-1(b), which deals with speed limits and the penalties for violating speed limits, clearly and conclusively states that "any speed in excess of the limits specified in this subsection or established as authorized in this section is unlawful." W. Va. Code § 17C-6-1(b). The preceding subsection is clear that "speed shall be controlled as necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highways in compliance with legal requirements and the duty of all persons to use due care." W. Va. Code § 17C-6-1(a). West Virginia traffic laws also placed upon Racer an affirmative duty to "exercise due care to avoid colliding with any pedestrian upon any roadway." W. Va. Code §17C-10-4. **Racer's own statement in the Internal Affairs investigation was that he did not see Laney Hudson prior to striking her.** He admitted at deposition that the intersection was well lit, and that Laney Hudson was wearing a reflective silver jacket. [Doc. 88-1, at PAGEID# 826-28.] The failure to see a pedestrian wearing reflective clothing at a well-lit intersection is a failure to exercise due care and to keep a proper lookout upon the roadway.

Racer's newly stated intent to argue the "sudden emergency doctrine" is misplaced and unsupported by the law. "A person in a sudden emergency, **not created in whole or in part by**

**<u>his own negligence</u>**, who acts according to his best judgment or who, because of insufficient time for reflection, fails to act in the most judicious manner, is not guilty of negligence if he exercises the degree of care which would be exercised by a reasonably prudent person in like circumstances." Syl. Pt. 3, *Moran v. Atha Trucking*, 208 W. Va. 379, 381, 540 S.E.2d 903, 905 (1997) (citing and quoting Syl. Pt. 3, *Poe v. Pittman,* 150 W. Va. 179, 144 S.E.2d 671 (1965)) (emphasis added). Here, Racer's negligence precludes application of the "sudden emergency doctrine" as his negligence is established as a matter of law based upon the Internal Affairs investigation findings that he was speeding in violation of W. Va. Code § 17C-6-1 and that he was "operating his vehicle in an irresponsible manner." At a minimum, his violation of the state speeding statute was, by his own admission, the proximate cause of Laney Hudson's death. W. Va. Code § 55-7-9 ("Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation[.]"); *see also* Syl. Pt. 2, *Waugh v. Traxler*, 186 W. Va. 355, 412 S.E.2d 756 (1991).

Additionally, the County Defendants' argument that, "There is insufficient evidence to determine that Defendant Racer, Jr. violated a statute at the time of the alleged car accident" is completely and utterly false, and completely unsupported by their own investigative findings. [Doc. 108, at pp. 8-9.] The County Defendants' investigation, completed with the help of the Kanawha County Sheriff's Office, determined not only that Racer violated W. Va. Code § 17C-6-1, but that he was "operating his [Cabell County patrol] vehicle in an irresponsible manner." Irresponsible operation of a vehicle is failure to exercise due care under §17C-10-4.

Plaintiffs' motion does not argue for negligence *per se* as Racer suggests. Rather, the motion, consistent with syllabus point 1 of *Anderson*, argues that there is *prima* facie evidence of negligence. [Doc. 91, at pp. 6-8; *see also* Syl. Pt. 1, *Anderson v. Moulder*, 183 W. Va. 77, 81, 394

S.E.2d 61, 65 (1990)]. Statutory violations that proximately cause injury to another "creat[e] a rebuttable *prima facie* presumption of negligence." *Waugh v. Traxler*, 186 W. Va. 355, 358, 412 S.E.2d 756, 759 (1991). Defendants have not pointed to anything in the record to establish a genuine issue of material fact regarding Racer's statutory violations. Likewise, they have not rebutted the presumption that Racer was not negligent by speeding. Instead, they argue that Laney Hudson was contributorily negligent. As is shown below, contributory negligence, if it is capable of being proven, is an affirmative defense and it does not relieve a party of liability.

Racer admits that he failed to render aid, but then argues that he was not asked about it at deposition. This is directly contradicted by what Racer calls the "inflammatory and misleading statement that 'after he struck her, Racer left Laney Hudson to die in the roadway'." He now proclaims that there was nothing he could have done to revive her. [Doc. 105, at p. 4.] Contrast that with, not only Racer's previously identified deposition testimony, but Racer's statement during the Internal Affairs investigation.

> Q: Uh-huh.
> A: I said, get me EMS and HPD down here, that I just struck a pedestrian in my cruiser. Had to go get fuel. Cause she couldn't spit out anything. She was so distraught. So, I handed her back the phone. I turned…I didn't wanna'…I didn't do any type of aid to the female because…or the pedestrian because I was like, this is now a crime scene. I didn't wanna' try to touch it. I didn't want to tamper… I didn't… I was like… So, I just set there. I stood there, and I just…that's when HPD and EMS started rolling in.

Ex. B., at p. 11 (CCC000530). **Racer was not even sure that Laney was dead at the time that he decided he was not going to render aid**.

Q: Uh-huh.
A: And he was like, you're fine. What…where is she? I was like, she's over there. I was like…she was like, is she dead? I was like, I didn't know. I didn't touch her. I didn't know if I was allowed. I didn't…

*Id.* at p. 12 (CCC000531). Now, with the benefit of time and hindsight, Racer proclaims that there was nothing anybody could have done to save Laney Hudson on December 30, 2022. His argument is not supported by any testimony that rendering aid, as he was required to do by statute, may have prolonged Laney Hudson's life.

**b. Laney Hudson is Presumed to Not Be Contributorily Negligent. Regardless, Contributory Negligence is an Affirmative Defense and It Does Not Relieve the Defendants of Liability in this Case.**

Laney Hudson was one month removed from her thirteenth birthday when she was struck by the speeding and inattentive Jeff Racer.[3] The parties all agree that syllabus point 2 of *Pino v. Szuch*, 185 W. Va. 476, 478, 408 S.E.2d 55, 57 (1991), controls. Under *Pino*, there is a rebuttable presumption that Laney Hudson could not be contributorily negligent because of her age. "[T]he burden is upon the party attempting to overcome the presumption to prove that the child has the capacity to be contributorily negligent." Syl. Pt. 2, *Pino*, *id.* The presumption is rebutted through evidence related to intelligence, maturity, experience, and judgmental capacity. *Id.* Here, Defendants rely heavily upon the deposition of N.S. to establish Laney's intelligence and maturity. It should be noted that his deposition was taken <u>after</u> Plaintiffs' filed their motion for summary judgment. His testimony, however, does not establish Laney's capacity for contributory negligence as Defendants suggest. It is actually the opposite.

N.S. testified that Laney was immature.

[3] The County Defendants incorrectly state in their response that Laney was 14 at the time of her death.

Q. Okay. Compared to everybody else was Laney immature?
A. I wouldn't say so. I would say she was about as mature as everybody else in that group was.
Q. That group was -- do you consider the group to be mature or immature?
A. Pretty immature group.

Deposition of N.S., previously filed and identified as Doc. 108-4, at p. 89 (PAGEID# 1451). This is consistent with her mother's testimony that Laney was immature. [*See* Doc. 108-06, p. 97:18 (PAGEID# 1599) ("A. My daughter was immature, but she wasn't ignorant.").] Defendants likewise cannot, and have not, pointed to anything that shows Laney was of above-average intelligence or experience. Therefore, they cannot overcome the presumption that she is incapable of contributory negligence.

Even if Defendants can argue that Laney had the capacity to be contributorily negligent, her actions prior to the crash (namely Defendants' continued reference to allegations that Laney was intoxicated when they do not have expert testimony to establish the same) are not the proximate cause of injury. "Comparative negligence is an affirmative defense, and the party asserting the defense bears the burden of proving that the negligence of the other party was a cause in fact of the accident." *Duff v. Kanawha Cty. Comm'n*, No. 23-43, 2024 W. Va. LEXIS 175, at *23 n.6 (W. Va. Ct. App. Apr. 22, 2024) (citing and quoting 65A C.J.S. *Negligence* § 790 (March 2023 update)); *see also Rowe v. Sisters of the Pallottine Missionary Soc'y*, 211 W. Va. 16, 23, 560 S.E.2d 491, 498 (2001) ("In any action -- medical malpractice or otherwise -- the defendant carries the initial burden of proving an affirmative defense such as comparative negligence."). The West

Virginia Supreme Court is clear on what a defendant must prove to succeed on a contributory negligence defense:

> In order to establish the defense of comparative negligence [the defendant] had to prove each of the elements of negligence: that [the plaintiff] owed herself a duty of care, that she breached that duty and that the breach was the proximate cause of the damages she sustained. Proximate cause means that the alleged wrong of the party caused the damage. There must be such a natural, direct and continuous sequence between the negligent act and the injury that it can reasonably be said that but for the act, the injury would not have occurred.

*Rowe v. Sisters of the Pallottine Missionary Soc'y*, 211 W. Va. 16, 23, 560 S.E.2d 491, 498 (2001)

"The proximate cause of an injury is the last negligent act contributing to the injury and without which the injury would not have resulted." Syl. Pt. 5, *Boyce v. Monongahela Power Co.*, 894 S.E.2d 913, 920 (W. Va. 2023) (quoting Syl. Pt. 5, *Matthews v. Cumberland & Alleghany Gas Co.*, 138 W. Va. 639, 77 S.E.2d 180 (1953)). "One requisite of proximate cause is an act or an omission which a person of ordinary prudence could reasonably foresee might naturally or probably produce an injury, and the other requisite is that such act or omission did produce the injury." Syl. Pt. 4, *id.* (quoting Syl. Pt. 4, *Matthews*, *supra*).

The "but for" causation in this case is not the improper and inflammatory argument that Laney was intoxicated, nor is it that Laney was walking upon the roadway at an intersection. Instead, the "but for" causation is Racer's speeding and his admitted failure to keep a lookout and to see Laney Hudson in the roadway in front of him.

**c. RACER'S MOTION TO DISMISS UNDER RULE 12(B)(6) IS MOOT AND HAS NO BEARING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON NEGLIGENCE.**

Racer's argument that summary judgment cannot be granted against him on the issue of negligence because of the reasons set forth in his Rule 12(b)(6) motion are without merit. The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint and place the defendant on notice of the claims against him. Clearly, through his argument, Racer is aware of the claims

against him concerning negligence. His motion to dismiss pursuant to Rule 12(b)(6) should be denied and summary judgment on the issue of negligence should be granted in favor of Plaintiffs.

## III. CONCLUSION

WHEREFORE, for the aforementioned reasons, Plaintiffs respectfully request that this Court GRANT their motion for partial summary judgment as to Defendants' negligence, and for any and all other relief that the Court deems necessary and just.

**PLAINTIFFS**,
By counsel

/s/Tyler Haslam

Tyler C. Haslam (W. Va. Bar. No. 11522)
***HASLAM LAW FIRM LLC***
Post Office Box 585
Huntington, West Virginia 25710
T: (304) 948-8529
F: (304) 948-8282
tyler@haslamlawfirm.com

Kerry A. Nessel (W. Va. Bar No. 7916)
***NESSEL LAW FIRM PLLC***
418 9th Street
Huntington, West Virginia 25701
T: (304) 697-6377
nessel@comcast.net

**CERTIFICATE OF SERVICE**

The foregoing was electronically served upon all counsel of record via the Court's CM/ECF filing system on the 11th day of September, 2024.

**PLAINTIFFS**,
By counsel

/s/Tyler Haslam
Tyler C. Haslam (W. Va. Bar. No. 11522)
***HASLAM LAW FIRM LLC***
Post Office Box 585
Huntington, West Virginia 25710
T: (304) 948-8529
F: (304) 948-8282
tyler@haslamlawfirm.com