## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

OPAL R. SLONE, individually and as the
Administratrix of the Estate of Jacquline Hudson, and
THE ESTATE OF JACQULINE HUDSON

                Plaintiff,

v.                                         CIVIL ACTION NO. 3:23-0636

JEFFREY RACER, individually & in his capacity
as a Deputy for the Cabell County Sheriff's Office, and
CABELL COUNTY SHERIFF'S OFFICE,
a West Virginia political subdivision, and
CHUCK ZERKLE, as the Elected Sheriff of
Cabell County, West Virginia, and
CABELL COUNTY COMMISSION,
a West Virginia political subdivision, and
JOHN DOE 1-5,

                Defendants.

## MEMORANDUM OPINON AND ORDER

        Pending before the Court is Defendant Jeffrey Racer's Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 34) and a joint Motion to Dismiss by Defendants Cabell County Sheriff's Office, Sheriff Chuck Zerkle, and the Cabell County Commission. ECF No. 41. For the following reasons, the Court **DISMISSES** the Cabell County Sheriff's Office as a Defendant in this matter, and **GRANTS, in part,** and **DENIES, in part,** the remainder of the motions.

**I.**
**FACTUAL AND**
**PROCEDURAL HISTORY**

On September 25, 2023, Plaintiffs Opal R. Slone, individually and as the Administratrix of the Estate of Jacquline Hudson, and the Estate of Jackquiline Hudson filed a Complaint against Jeffrey Racer, the Cabell County Sheriff's Office, Sheriff Chuck Zerkle, the Cabell County Commission, and John Does 1-5. The named Defendants filed Answers and Motions to Dismiss. In response, Plaintiffs filed an unopposed Motion to Amend their Complaint. The Court granted the motion and denied the pending Motions to Dismiss without prejudice. On January 3, 2024, Plaintiffs filed their First Amended Complaint. The named Defendants then filed Answers to the First Amended Complaint and renewed Motions to Dismiss.

Plaintiffs allege in their First Amended Complaint that Jeffrey Racer was a Cabell County Deputy Sheriff who was acting within the scope and authority of his employment and under color of state law when he struck and killed thirteen-year-old Jacquiline "Laney" Hudson with his patrol cruiser. *Am. Compl.* ¶¶1, 28. At the time of the event, Plaintiff alleges that Deputy Racer was driving above the speed limit in an outrageous, reckless, or negligent manner and Ms. Hudson's body was thrown approximately 150 feet from the point of impact. *Id*. ¶¶3, 6, 50, 66. In his Affidavit, which Plaintiffs quote and reference in the Amended Complaint, Deputy Racer further states that, when the accident happened, he was driving the cruiser to the Main Tri-State Transit Authority to refuel it. *Id*. ¶7; *Aff. of Jeffrey Racer, Jr.* ¶4 (Oct. 17, 2023), ECF No. 14-1. Although his shift had ended earlier in the day, Deputy Racer asserts the Cabell County Sheriff's Office had a policy that "tasks deputies such as [himself] with ensuring that their County-issued

vehicles are properly maintained in a manner that will allow them to effectively discharge their duties during their shift," which includes permitting off-duty deputies to drive their patrol vehicles for refueling purposes. *Aff. of Racer* ¶¶3, 5-7. Deputy Racer stated that his "plan was to refuel and then drive [his] County-issued vehicle to the residence at which [he] was staying that night so that [his] fully-fueled vehicle was ready for patrol immediately when [his] shift started the following morning." *Id*. ¶4.

Plaintiffs further allege that, after Deputy Racer struck Ms. Hudson, he failed to render proper aid to her or place her in his cruiser and drive her to an emergency department that was one-half mile away. *Am. Compl.* ¶¶40-42. Plaintiffs claim that he also did not use his radio, his department-issued cellphone, or his personal cellphone to call 911. *Id*. ¶¶43, 44. Instead, he relied upon a bystander to call 911 to report the accident. *Id*. ¶44. Unfortunately, Ms. Hudson tragically died at the scene.

As a result of these events, Plaintiffs assert nine causes of action in their Amended Complaint against Defendants. In Count I, Plaintiffs assert a claim under 42 U.S.C. § 1983 against all the named Defendants for violating the substantive due process clause under the Fourteenth Amendment. In Count II, Plaintiffs state a claim of negligence against Deputy Racer and a claim of vicarious liability for his negligent acts against Defendants the Cabell County Sheriff's Office, the Cabell County Commission, and Sheriff Zerkle. In Count III, Plaintiffs allege Defendant Racer violated his duty to render aid to Ms. Hudson. In Count IV, Plaintiffs assert a claim for Wrongful Death under West Virginia law. In Count V, Plaintiffs assert a § 1983 claim against Defendants the Cabell County Sheriff's Office, the Cabell County

Commission, and Sheriff Zerkle for failing to properly screen Deputy Racer when he was hired and for failing to properly train and supervise him. In Count VI, Plaintiffs state a claim for negligent hiring against Defendants the Cabell County Sheriff's Office, the Cabell County Commission, and Sheriff Zerkle. In Count VII, Plaintiffs assert a claim against Defendants the Cabell County Sheriff's Office, the Cabell County Commission, and Sheriff Zerkle for negligent retention. In Count VIII, Plaintiffs assert Defendants actions and/or inactions violated the West Virginia State Constitution. Lastly, in Count IX, Plaintiffs assert a claim for intentional and/or negligent infliction of emotional distress against all Defendants. Defendants now seek to have these claims dismissed.

## II.
## STANDARD OF REVIEW

In both Deputy Racer's motion and the joint motion by Defendants the Sheriff's Office, the County Commission, and Sheriff Zerkle, the parties argue the claims against them should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, the motion filed by the joint Defendants was filed after they filed their Answer and Deputy Racer's motion was filed contemporaneously with his Answer. Therefore, both motions technically are motions for judgment on the pleadings pursuant to Rule 12(c), rather than under Rule 12(b)(6). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) (stating that because the answer and motion to dismiss were filed "simultaneously, it technically should have filed the motion under Rule 12(c) as one for judgment on the pleadings" (citations omitted)).

Nevertheless, as a practical matter, the standard of review for a Rule 12(c) motion is nearly identical to one under Rule 12(b)(6), with the key difference being that under Rule 12(c) a court also may consider a party's Answer and attachments. *See Pellegrino v. Equifax*

*Info. Servs., LLC*, 709 F. Supp.3d 206, 211 (E.D. Va. Jan. 2, 2024) (stating that, "[i]n ruling on a motion under Rule 12(c), the court applies the standard for a Rule 12(b)(6) motion, [however,] [u]nlike a Rule 12(b)(6) motion, courts consider[ ] the pleadings (the complaint, answer, and any written instruments attached to those filings) and any documents that are integral to the complaint and authentic" (internal quotation marks and citations omitted)); *cf. Morrison v. Indian Harbor Ins. Co.*, Civ. Act. No. 3:23-0451, 2024 WL 3258213, at *3 (S.D. W. Va. July 1, 2024) (stating "a court reviewing a Rule 12(b)(6) motion 'may . . . consider documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic" without converting the motion into one for summary judgment'" (quoting *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014)). Here, similar to the Affidavit, Deputy Racer also states in his Amended Answer that, at the time of the accident, "he was going to refuel his vehicle" and "was acting within the scope of his employment." *Def. Jeffrey Racer, Jr.'s Ans. To Pls.' First Am. Compl.* ¶¶1, 8, ECF No. 33. Deputy Racer further explained "he was required to insure [sic] that the routine and scheduled maintenance on his assigned vehicle was current and properly maintained and that he was permitted to utilize his assigned vehicle while not on duty to refuel his vehicle in preparation for returning to duty." *Id.* ¶8. As the authenticity of Deputy Racer's Affidavit is not challenged and Plaintiffs specifically quote from it in the Amended Complaint to support their claims, the Court may consider both the Affidavit and Deputy Racer's Answer under Rule 12(c) without converting the motion into one for summary judgment.

Additionally, as a Rule 12(c) motion in other respects is the same as a Rule 12(b)(6) motion, the Court must "accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiffs." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 685 (4th Cir. 2018) (citation omitted). "However, the court need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385–86 (4th Cir. 2009) (internal citations, brackets, and quotations omitted). This Court should grant a Rule 12(c) motion only if, "'accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" *Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 139 (4th Cir. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999)). It is under these standards the Court must consider Defendants' arguments.[1]

### III.
### DISCUSSION

### A.
### Cabell County Sheriff's Office

Initially, the Court addresses the Cabell County Sheriff's Office's argument that it lacks the capacity to be sued. This Court recently addressed this precise issue in *Eagon v. Cabell County Emergency Medical Services*, Civ. Act. No. 3:23-0013, 2023 WL 8853727 (S.D. W. Va.

---

[1] Plaintiffs make a cursory argument that Defendants' motions should be summarily denied because they cite the wrong Rule. Although Defendants should be more observant in the future, to deny both motions on this basis would put form over substance, with Defendants likely refiling the same motions under Rule 12(c). Therefore, the Court rejects Plaintiffs' argument. *See Shelton v. Safeway, Inc.,* No. Civ. Act. No. PJM 10-2358, 2011 WL 1869827, at *3 (D. Md. May 16, 2011) ("To avoid the elevation of form over substance, a court may construe an untimely Rule 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings.").

Dec. 21, 2023). In *Eagon*, the Court held that the Cabell County "Sheriff's Department is not a separate suable entity as suit lies with the County Commission." *Eagon*, 2023 WL 8853727, at *3 (citing *Zsigray v. Cty. Comm'n of Lewis Cty.*, Civ. Act. No. 2:16-0064, 2017 WL 462011, at *2 (N.D. W. Va. Feb. 2, 2017), aff'd sub nom. *Zsigray v. Cty. Comm'n of Lewis Cty.*, 709 F. App'x 178 (4th Cir. 2018) (holding "while West Virginia law authorizes suits against a county commission/council, it does not contain any similar provision for county sheriff's offices. Therefore, while plaintiff may sue the County Commission of Lewis County, he may not sue the Lewis County Sheriff's Office" (citation omitted)).

In response, Plaintiffs cite two West Virginia Supreme Court cases that discuss a sheriff's office's liability. *See Helms v. Carpenter*, Civ. Act. No. 16-1070, 2017 WL 5513618, *6 (W. Va. Nov. 17, 2017) (unpublished) (stating "[u]nder §1983, a sheriff's department may not be held liable for the actions of its employees or agents, but may be held liable for constitutional torts caused by the department's policies, procedures, or customs" (citation omitted)); *Maston v. Wagner*, 781 S.E.2d 939, 955 (W. Va. 2015) (holding "the Tyler County Sheriff's Department is not entitled to immunity because, under the Governmental Tort Claims and Insurance Reform Act, a political subdivision (such as a county sheriff) is statutorily liable for damages 'caused by the negligent performance of acts by their employees while acting within the scope of employment.' W. Va. Code § 29–12A–4(b)(1), (c)(2) [1986]"). However, it does not appear in either of these cases that the issue of whether a sheriff's office actually is a separate suable entity was raised or addressed. Additionally, although the district court in *Cottrell v. Stepp*, Civ. Act. No. 2:18-01281, 2019 WL 1140198, *4 (S.D. W. Va. Mar. 12, 2019), found "a county sheriff's office is a suable entity under West Virginia law," this Court stands by its position that it is not

suable and the county commission is the properly named defendant. *See Eagon*, *supra*; *Barnett v. Cabell Cty. Comm'n*, Civ. Act. No. 3:22-0203, 2023 WL 2604800, at *4 (S.D. W. Va. Mar. 22, 2023) ("It is likewise axiomatic in West Virginia that the county commission is the proper party for suit when claims are alleged against the county, county officers, or county officials. W. Va. Code § 7-1-1(a)(1).").[2] Therefore, the Court **GRANTS** the motion to dismiss the Sheriff's Office and finds any liability that attaches to the Sheriff's Office's acts or omissions rests on the shoulders of the county commission, which already is named as a Defendant in this action.

## B.
## 42 U.S.C. § 1983 Claims

### 1.
### Count I

Next, the Court considers Defendants' arguments to dismiss Count I. In Count I, Plaintiffs allege that Defendants violated the substantive due process clause under the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983. The Fourth Circuit has explained that "a plaintiff asserting a § 1983 substantive due process claim must allege both the deprivation of his life, liberty or property interest by a state actor, and that the deprivation of this interest was "'arbitrary in the constitutional sense.'" *Callahan v. N. Carolina Dep't of Pub.*

---

[2]*See also Zsigray*, *supra*; *Frederick v. W. Virginia Dep't of Health & Hum. Servs.*, Civ. Act. No. 2:18-01077, 2019 WL 1198027, at *46 n.26 (S.D. W. Va. Feb. 15, 2019), report and recommendation adopted, Civ. Act. No. 2:18-01077, 2019 WL 1173358 (S.D. W. Va. Mar. 13, 2019) (stating "neither the Jefferson County Sheriff's Department [n]or the Jefferson County Prosecuting Attorney's Office are suable entities. Rather, the proper entity or entities to be sued are the elected officials of these offices or the Jefferson County Commission, which is the governing body of the County"); *Rankin v. Berkeley Cty. Sheriff's Dep't,* 222 F. Supp. 2d 802, 807 (N.D. W. Va. 2002) ("finding that the Berkeley County Sheriff's Department is not a separate cognizable legal entity"); *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989) (finding, in Maryland, "[t]he separate claim against the 'Office of Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency" (citations omitted)).

*Safety*, 18 F.4th 142, 145 (4th Cir. 2021) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)). In this case, Plaintiffs allege that Deputy Racer acted within the scope of his employment with "reckless indifference" to Laney Hudson's rights by operating his patrol vehicle "in excess of posted speed limits and/or fail[ing] to operate his vehicle with due care or due regard" which resulted in her death. *Am. Compl.* ¶47. In the alternative, Plaintiffs assert Deputy Racer's excessive speed was "unnecessary, unreasonable, and outrageous and constitutes wanton, willful, reckless, unjustifiable, and malicious conduct" or establishes a "fail[ure] to exercise due care or due regard[.]" *Id.* ¶¶49, 50. Plaintiffs also allege the mandated refueling policy that permitted Deputy Racer to take his patrol vehicle with him after his shift ended "created a danger to citizens . . ., including Laney Hudson, because it failed to ensure that deputies operated their vehicles with ordinary and due care and pursuant to the requirements of West Virginia state law." *Id*. ¶53. Plaintiffs further claim that "Defendants callously and recklessly disregarded Plaintiffs' state and federal constitutional and statutory rights by Defendants' custom(s), policies, and/or procedures that created the situation wherein Defendant Racer ignored posted speed limits while engaged in a mandated refueling task." *Id.* ¶55. Defendants challenge the sufficiency of these allegations under § 1983.

"Section 1983 provides a cause of action against '[e]very person who, *under color of any statute, ordinance, regulation, custom, or usage*, of any State*' deprives someone of a federal constitutional or statutory right." *Lindke v. Freed*, 601 U.S. 187, 194 (2024) (quoting 42 U.S.C. § 1983; emphasis added in *Lindke*)). In other words, § 1983 "protects against acts attributable to a State, not those of a private person." *Id*. (citations omitted). Although often it is easy to distinguish between state and private acts, sometimes the line is blurred, and courts have

grappled with where the line should be drawn. *Id*. at 195-96. To do so, a court must closely examine whether "'the conduct allegedly causing the deprivation of a federal right be *fairly attributable to the State*'" with careful consideration paid "to the relevant statute, ordinance, regulation, custom, or usage" or "grant of authority" to the alleged actor. *Id.* at 198, 200 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (emphasis added in *Lindke*)).

In determining whether Plaintiffs' have adequately alleged a substantive due process claim, the Court looks to the Fourth Circuit's decision in *Dean ex rel. Harkness v. McKinney*, 976 F.3d 407 (4th Cir. 2020). In *Dean*, a deputy sheriff was on patrol and driving a department-owned vehicle when he collided with another motorist who sustained severe injuries. 976 F.3d at 411-12. Prior to the accident, the deputy was responding to a "Code 3" emergency response, which permitted him to exceed the posted speed limit. *Id*. While in route to the scene, however, the Code 3 was cancelled and the deputy was required to cut back his speed and abide by the traffic laws. *Id.* at 412. Approximately two minutes after the Code 3 ended, the deputy was still driving "at least 38 miles per hour over the 45 mile-per-hour speed limit" when he wrecked. *Id.* The guardian and conservator of the injured motorist filed a lawsuit against the deputy, the Sheriff, and the Sheriff's Office, alleging, in part, a § 1983 claim for violating the injured motorist's substantive due process rights under the Fourteenth Amendment for driving at an excessive speed and acting with deliberate indifference. *Id*.

On appeal, the deputy argued the district court erred by not granting him qualified immunity. In considering whether the deputy violated the injured motorist's substantive due process rights, the Fourth Circuit held that, "when an officer is able to make unhurried judgments

with time to deliberate, such as in the case of a non-emergency, deliberate indifference is the applicable culpability standard for substantive due process claims involving driving decisions." *Id.* at 415 (citation omitted). An officer's conduct is deliberately indifferent where the evidence demonstrates "the officer subjectively recognized a substantial risk of harm and that his actions were inappropriate in light of the risk." *Id.* 416 (citations omitted). Additionally, an officer's "subjective knowledge of the risk may be inferred from circumstantial evidence." *Id.* (citations omitted).

Applying this standard to the facts before it, the Fourth Circuit found that a reasonable jury could determine that the deputy "knowingly disregarded a substantial risk of serious harm, and that his deliberate indifference to life and safety was conscience-shocking, in violation of [the injured motorist's] Fourteenth Amendment substantive due process rights." *Id.* at 417 (citations omitted). Additionally, the Fourth Circuit determined that, while there were no cases exactly the same as the one under review, "[a] reasonable officer in [the deputy's] position would have known his conduct was not only unlawful, but that it created a substantial risk of serious harm to those around him" and, thus, was clearly established at the time of the accident. *Id.* at 419. Accordingly, the Fourth Circuit held the deputy was not entitled to qualified immunity. *Id.* at 419.

More recently, in *Powell v. Barry*, Civ. Act. No. 2:22-01604-DCN, 2023 WL 5672757 (D. S.C. Sept. 1, 2023), a § 1983 action was filed alleging that a fatal car accident was caused by a deputy sheriff who was driving in excess of the speed limit. At the time of the accident, the deputy was in uniform and driving a patrol car "to the precinct before his active-

-11-

duty shift." 2023 WL 5672757, at *4.  In considering whether the plaintiff's § 1983 claim should be dismissed, the district court cited the Fourth Circuit's decision in *McKinney* and had little difficulty finding the plaintiff had plausibly alleged the deputy "knowingly disregarded a substantial risk of serious harm and that his deliberate indifference to life and safety was conscience-shocking, in violation of the decedent's Fourteenth Amendment substantive due process rights" by driving well in excess of the speed limit. *Id.* at *3 (citation omitted). Likewise, the district court found the law was clearly established at the time of the accident. *Id*. at *7 (citation omitted). However, unlike *McKinney*, the district court found the § 1983 claim could not survive because the deputy was not acting under the color of law when the accident occurred. Although the deputy stated he was acting in the scope of his employment and the plaintiff alleged he was acting under color of law, the district court determined the facts belied those assertions. Rather, the district court stated the "nature of the act" controls regardless of whether an officer is on or off duty. *Id.* at **4, 7. From this standpoint, the district court found the deputy driving to work and exceeding the speed limit during his commute was "purely personal circumstances" that  did not arise from his official duties. *Id.* at *4.

In support of their argument that Plaintiffs' § 1983 claim cannot survive, the joint Defendants and Deputy Racer cite *Powell* and insist that Deputy Racer was not acting within the scope of his employment because he was off duty and he was driving to refuel like any other person. However, the Court finds this case distinguishable from *Powell*. Here, Plaintiff alleged in her Complaint that the Sheriff's Office had a policy "task[ing] deputies with ensuring that their County-issued vehicles are properly maintained in a manner that allows them to effectively discharge their duties during their shift." *Am. Compl.* ¶29. Additionally, in his Affidavit, Deputy

Racer states that the "Sheriff's Department permits deputies such as [himself] to drive their County-issued vehicles when they are off-duty for certain employment-related purposes, including refueling," and that he elected to take his vehicle and was traveling to refuel it at a governmental gas station "in preparation for my duties the following morning as permitted by the policies and/or procedures of the Cabell County Sheriff's Department." *Aff. of Jeffrey Racer, Jr.* ¶¶6-7. Thus, while Deputy Racer's official shift had ended, the Court finds Plaintiff has plausibly alleged he nevertheless was acting under color of law at the time of the accident as he was performing an employment-related duty pursuant to the Sheriff Office's policy or procedure that required him to refuel his patrol vehicle. To the contrary, in *Powell*, the deputy was not acting pursuant to any policy that he had to complete an employment-related task with his patrol vehicle, he was simply driving it to work. This situation makes *Powell* substantively different than what is alleged in this case.

The Court also finds the allegations are sufficient to show a violation of Ms. Hudson's substantive due process rights. Plaintiffs assert that, at the time of the accident, Deputy was not responding to an emergency, was not in pursuit, and had no other official reason to exceed the posted speed limit. Therefore, Deputy Racer had time to consider his conduct, and the deliberate indifference standard applies. *See McKinney*, 976 F.3d at 416 (stating the deliberate indifference standard applies when the officer had "ample time to deliberate his actions"). Under this standard, the Court finds a reasonable jury could decide Deputy Racer subjectively should have recognized his speed presented a substantial risk of harm to others, was inappropriate in light of that risk, and was dangerous, reckless, and conscience-shocking in violation of Ms. Hudson's Fourteenth Amendment substantive due process rights. *See id*.

-13-

The County Commission also argues that Plaintiffs' § 1983 claim in Count I should be dismissed against them under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). "[I]t is well established [under *Monell*] that a state's political subdivisions are amenable to suit under § 1983." *Doe v. Cabell County Board of Education*, Civ. Act. No. 3:21-0031, 2022 WL 568342, *2 (S.D. W. Va. Feb. 24, 2022). As this Court recently explained in *Eagon*, "[t]o hold a political subdivision liable under *Monell*, 'a plaintiff must adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights.'" 2023 WL 8853727, at *4 (quoting *Doe*, 2022 WL 568342, at *2; other internal quotation marks and citation omitted). Municipal liability may occur when an employee acts "under color of some official policy . . . [that] causes [the] employee to violate another's constitutional rights." *Monell*, 436 U.S. at 692 (internal quotation marks omitted). A municipality's policy or custom can be created in four ways:

> through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). When determining the sufficiency of a Complaint, a plaintiff's allegations "need not be particularly detailed, and the chance of success need not be particularly high." *Owens v. Baltimore City State's Att'ys Office*, 767 F.3d 379, 403 (4th Cir. 2014) (citations omitted).

In considering whether the refueling policy itself created a danger, the Court finds the allegations against the County Commission and Sheriff Zerkle in Count I are inadequate. The

alleged refueling policy is completely neutral and was not the proximate cause of the accident. Instead, assuming the facts in the light most favorable to Plaintiffs, the proximate cause of the accident was the manner in which Deputy Racer drove to refuel. In other words, his alleged speed was the immediate cause of the accident, not that he purportedly was driving pursuant to a policy requiring him to have sufficient fuel for his next shift. Therefore, this portion of Plaintiffs' claim is dismissed.

**2.**
**Count V**

In Count V, Plaintiffs further allege that the County Commission and Sheriff Zerkle's are liable under § 1983 because they failed to properly screen Deputy Racer before he was hired and, once hired, they failed to adequately train and supervise him. Plaintiffs contend these factors also contributed to the accident. However, the County Commission and Sheriff Zerkle argue Plaintiffs have failed to set forth a sufficient factual basis for these claims.

Specifically, Plaintiffs allege that the County Commission and Sheriff Zerkle failed to properly screen deputy sheriff candidates, including Deputy Racer. *Am. Compl.* ¶100. If Deputy Racer had been properly screened, Plaintiffs contend they would have learned he had a history of speeding and, consequently, should have realized his propensity to speed would likely result in harm to a third person. *Id.* ¶¶101, 102. Additionally, Plaintiffs claim that, after he was hired, there were "multiple negative events" documented in his "personal jacket." for *Id.* ¶112. Yet, Plaintiffs state the County Commission and Sheriff Zerkle failed to adequately train and supervise him, specifically with respect to his driving and his responsibility to render aid following an accident. Furthermore, Plaintiffs allege there was "an official and/or unofficial policy or custom beyond those sworn to by Defendant Racer that permitted Cabell County

Sheriff's Deputies to ignore posted speed limits when engaged in employment-related activities, like refueling." *Id*. ¶103.

In determining whether Plaintiffs' claims based upon inadequate hiring, training, and supervision under § 1983 can survive dismissal, the Court recognizes that "[s]poradic or isolated violations of rights will not give rise to *Monell* liability; only widespread or flagrant violations will." *Owens v. Baltimore City State's Attys Off*., 767 F.3d 379, 403 (4th Cir. 2014) (internal quotation marks and citation omitted). As to Plaintiffs' claim the County Commission and Sheriff Zerkle inadequately screened Deputy Racer's background when he was hired, the United States Supreme Court reiterated in *Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397 (1997), "that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor" nor can be held "liable under a theory of *respondeat superior*." 520 U.S. at 403 (citations omitted). Rather, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Id.* (citations omitted). A "custom" may be shown when a practice is so widespread it has the force of law even if it has never been formally approved. *Id.* at 404. To prove liability under § 1983, it is not enough for a plaintiff "to identify conduct properly attributable to the municipality," the plaintiff also must show the municipality's "*deliberate* conduct . . . was the 'moving force' behind the injury alleged." *Id.* (emphasis original). In other words, the Supreme Court explained that "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (emphasis original).

The Supreme Court further cautioned that, if "municipal liability rests on a single decision, not itself representing a violation of federal law and not directing such a violation," there exists a high danger liability will be found despite the absence of municipal fault. *Id*. at 408. When a "decision necessarily governs a single case, there can be no notice to the municipal decisionmaker, based on previous violations of federally protected rights, that his approach is inadequate." *Id.* Likewise, the plaintiff will not be able to point to another event "mak[ing] it more likely that the plaintiff's own injury flows from the municipality's action, rather than from some other intervening cause." *Id.* at 408-09. Particularly, when there is a decision to hire a single employee, courts must be especially cautious not to allow it to become a backdoor to attach liability via *respondeat superior*. *Id.* "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "'deliberate indifference.'" *Id.* at 411. *See also Connick v. Thompson*, 563 U.S. 51, 64 (2011) (stating in limited circumstances a failure may "be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations").

As to Plaintiffs' claim Deputy Racer should have never been hired because he had a history of speeding, those allegations reflect a decision to hire a single employee. While Plaintiffs further claim that the County Commission and Sheriff Zerkle generally "failed to properly screen . . . candidates . . . through the background review process,"[3] they offer no factual support in the Amended Complaint that this failure was a general practice. In their

---

[3]*Id.* ¶100.

Response, Plaintiffs also assert Deputy Racer was required to complete certain trainings before he could be employed as a deputy, and the County Commission and Sheriff Zerkle stated in their Amended Answer that they were without sufficient information to either admit or deny Deputy Racer had completed those training. [4] Therefore, Plaintiffs argue the Court should deem their Amended Answer as an admission that Deputy Racer lacked the qualifications to be employed. The Court declines to draw this conclusion but, even if it did, it still reflects a single applicant and not a widespread policy or practice. Thus, at this point in the proceedings, the Court must decide whether the allegations are sufficient to survive a judgment on the pleadings because they fall within the narrow exception to show the accident was a plainly obvious consequence of the decision to hire Deputy Racer in light of his background. Assuming the truth of Plaintiffs' allegation that Deputy Racer's has a history of speeding, the Court finds it is plausible that his driving record is so alarming that it should have been plainly obvious that he would get into an accident. Therefore, the Court finds this claim survives the County Commission and Sheriff Zerkle's motion.

Plaintiffs further contend Deputy Racer's history of speeding and multiple negative events in his personnel jacket made it plainly obvious that a lack of training and supervision would result in a deprivation of a third person's constitutional rights and constitute deliberate indifference on the part of the County Commission and Sheriff Zerkle. Although the Court agrees with the County Commission and Sheriff Zerkle that the Amended Complaint does not allege sufficient facts to show there was a general policy, practice, or custom of failing to train and supervise deputies as a whole, the Court finds the allegations specific to Deputy Racer,

---

[4] *Answer to Pls.' Am. Compl.*, ¶¶64, 65, ECF No. 32.

taken in the light most favorable to Plaintiffs, do plausibly state a claim that the accident was an obvious consequence of a failure to adequately train and supervise him given his alleged background. As such, for purposes of judgment on the pleadings, the Court finds the allegations fall within the narrow exception in which it is possible to establish a single-incident liability for deliberate indifference on the part the County Commission and Sheriff Zerkle.

## C.
### Negligent Hiring and Retention

In Count VI, Plaintiffs assert that the County Commission and Sheriff Zerkle were negligent in hiring Deputy Racer and, in Count VII, Plaintiffs claim they were negligent in retaining him. In *McCormick v. West Virginia Department of Public Safety*, 503 S.E.2d 502, 506 (W. Va. 1998) (per curiam), the West Virginia Supreme Court of Appeals stated that liability for negligent hiring or retention should be determine by asking:

> when the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

*McCormick*, 503 S.E.2d at 506 (internal quotation marks and citation omitted). Additionally, the Court stated that, an employer's liability for negligent hiring or retention, requires consideration of the "the nature of the employee's job assignment, duties and responsibilities—with the employer's duty with respect to hiring or retaining an employee increasing, as the risks to third persons associated with a particular job increase." *Id.* at 507 (citation omitted).

Similar to the § 1983 claim, Plaintiffs allege with respect to their negligent hiring and retention claims that the County Commission and Sheriff Zerkle "failed to conduct a

reasonable investigation into Deputy Racer's background to determine his suitability for work as a law enforcement officer, resulting in risk of harm to the citizens of Cabell County, West Virginia." *Am. Compl.* ¶117. Plaintiffs claim that, given Deputy Racer's history of speeding, the County Commission and Sheriff Zerkle should have foreseen the risk. *Id.* ¶119. Additionally, Plaintiffs allege that the County Commission and Defendant Sheriff were aware of "negative events and/or misconduct committed by Defendant Racer[, which] made him unqualified to remain employed" as a deputy, but they did not terminate him. *Id.* ¶¶125, 126. In their motion, the County Commission and Sheriff Zerkle argue there is an insufficient factual basis to support Plaintiffs' claims.

For the same reasons the Court found the § 1983 hiring claim may proceed, the Court finds the factual allegations are sufficient to support a plausible claim that it reasonably could be foreseen that Deputy Racer would have an accident caused by speeding. Likewise, the Court finds the negligent retention claim survives as Plaintiffs not only allege Deputy Racer had a history of speeding, but his personnel jacket also had negative events and/or misconduct which made the risk to Ms. Hudson reasonably foreseeable. Therefore, the Court denies the County Commission and Sheriff Zerkle's motion as to Counts VI and VII.

### D.
### State Constitutional Violations

In Count VIII, Plaintiffs allege all "Defendants violated the constitutional rights guaranteed to Plaintiffs under Article III, Sections 1, 9, and 10 of the West Virginia Constitution." *Am. Compl.* ¶132. In their motion, the County Commission and Sheriff Zerkle move for judgment against Plaintiffs on their claims under Sections 1 and 10, and Deputy Racer moves for judgment as to all three sections. With regard to Section 1, the Court agrees with

Defendants that Plaintiffs' claim under Section 1 fails as a matter of law because it is entitled as the Bill of Rights, and simply "'is a statement of basic principle' and does not independently give rise to a cause of action." *Smith v. Oiler*, Civ. Act. No. 3:21-0649, 2022 WL 385499, at *2 (S.D. W. Va. Feb. 8, 2022) (citations omitted).

With regard to Section 10, it provides: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." W. Va. Const. art. III, § 10. Defendants argue Plaintiffs' claim under this Section 10 must be dismissed pursuant to the West Virginia Supreme Court's decision in *Stepp v. Cottrell*, 874 S.E.2d 700 (W. Va. 2022). In *Stepp*, the plaintiff brought an action against various law enforcement officers and law enforcement agencies on a variety of grounds including battery, negligence, § 1983, and excessive force. On certified questions, the West Virginia Supreme Court determined that the excessive force claim "'should be analyzed under Article III, Section 6, the state counterpart to the Fourth Amendment, rather than under a substantive due process approach.'" 874 S.E.2d at 705 (quoting *Schoonover v. Clay Cty. Sheriff's Dep't*, Civ. Act. No. 2:19-00386, 2020 WL 2573243, at *9 (S.D. W. Va. May 21, 2020)). The Court reasoned that Section 10 does not create a separate cause of action for excessive force, there were other remedies available to the plaintiff, and the specificity of Section 6 with respect to excessive force should control over the generality of Section 10. *Id.* at 707. Additionally, the Court found a claim under Section 10 would be redundant to a Section 6 claim. *Id.* Although the plaintiff argued it should be a distinct cause of action because West Virginia does not recognize a private cause of action for money damages under Section 6, the Court disagreed emphasizing that there remained other remedies available to the plaintiff. *Id.* (citing Syl. Pt. 3, *Fields v, Mellinger*, 851 S.E.2d 789 (W. Va. 2020)).

In this case, Plaintiffs argue *Stepp* does not apply because there is no specific State constitutional provision that supplants their claim under Section 10. Therefore, Plaintiffs assert the Court should permit the claim to proceed. On the other hand, Defendants insist the claim should be dismissed because there are other remedies available vis-à-vis Plaintiffs other causes of action in the Amended Complaint.

Upon consideration, the Court agrees with Defendants. Despite there being no other applicable State constitutional provision, a fair reading of *Stepp* indicates that there cannot be a private cause of action for money damages under Section 10 for a violation on substantive due process if there are other common law or statutory remedies available to Plaintiffs. Therefore, Plaintiffs have failed to state a claim under Article III, Section 10. *Compare with* Syl. Pt. 2, *Hutchison v. City of Huntington*, 479 S.E.2d 649 (W. Va. 1996) ("Unless barred by one of the recognized statutory, constitutional or common law immunities, a private cause of action exists where a municipality or local governmental unit causes injury by denying that person rights that are protected by the Due Process Clause embodied within Article 3, § 10 of the West Virginia Constitution.").

Deputy Racer also argues that Section 9 must be dismissed because Plaintiffs have not alleged he deprived them of any private property. Section 9 provides, in part: "Private property shall not be taken or damaged for public use, without just compensation[.]" W. Va. Const. art. III, § 9, in part. Plaintiffs did not respond to Deputy Racer's argument, and the Court

agrees that they have not stated a cognizable claim against him under Section 9. Therefore, the Court grants judgment in favor of Deputy Racer on this claim.[5]

### E.
### Intentional and/or Negligent
### Infliction of Emotional Distress

The County Commission next argues it is statutorily immune from Plaintiffs' claim for intentional infliction of emotional distress (IIED) pursuant to the West Virginia Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-1 *et seq*. In their Response, Plaintiff concedes it cannot pursue this claim. Therefore, the Court grants the motion for judgment on the pleadings as to the County Commission.[6] *See Hall v. Putnam Cty. Comm'n*, 637 F. Supp. 3d 381, 402 (S.D. W. Va. 2022) (finding the Putnam County Commission "is immune from suit under the intentional state torts of abuse of process, IIED, and spoilation of evidence").

Deputy Racer also argues this claim against him must be dismissed because Plaintiffs do not allege anything in the Amended Complaint that could be considered intentional or so reckless as to be tantamount to intentional conduct. To prevail on an intentional or reckless infliction of emotional distress claim, a plaintiff must show:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the

---

[5]The County Commission and Sheriff Zerkle did not move to have Section 9 dismissed. Therefore, this claim remains against them.

[6]Plaintiffs concede they cannot pursue this claim against the Sheriff's Office. However, as the County Commission, not the Sheriff's Office, is the properly named Defendant, the Court construes it as a concession as to the County Commission.

> actions of the defendant caused the plaintiff to suffer emotional
> distress; and, (4) that the emotional distress suffered by the
> plaintiff was so severe that no reasonable person could be expected
> to endure it.

Syl. Pt. 3, *Travis v. Alcon Lab'ys, Inc.*, 504 S.E.2d 419 (W. Va. 1998). Here, Plaintiffs

specifically have alleged "Defendant Racer acted with reckless indifference to the life of Laney

Hudson while driving in excess of the posted speed limit and/or failing to exercise due care in

the operation of his patrol vehicle while engaged in an employment-related refueling task . . . ."

*Am. Compl.* ¶39. Plaintiffs further assert Deputy Racer did not render proper aid to Ms. Hudson

or call 911 after the accident. *Id.* ¶¶40-44. In light of these allegations, the Court finds Plaintiffs

have stated a plausible claim of intentional or reckless conduct on the part of Deputy Racer and

denies his motion in this regard.


Defendants also argue the negligent infliction of emotional distress (NIED) claim

must be dismissed. In Syllabus Point 1, of *Heldreth v. Marrs*, 425 S.E.2d 157 (1992). the West

Virginia Supreme Court explained:

> A defendant may be held liable for negligently causing a plaintiff
> to experience serious emotional distress, after the plaintiff
> witnesses a person closely related to the plaintiff suffer critical
> injury or death as a result of the defendant's negligent conduct,
> even though such distress did not result in physical injury, if the
> serious emotional distress was reasonably foreseeable.

Syl. Pt. 1, *Heldreth,* in part. Defendants assert Plaintiffs cannot met the standard set forth in

*Heldreth* because Ms. Slone, individually and as the Administratrix of her daughter's estate, did

not contemporaneously witness the accident and only arrived at the scene after the fact. In

Response, Plaintiffs argue the claim should survive because Ms. Slone was notified of the

accident "and went to the scene where Defendant Racer struck Laney Hudson. At the time [she]

-24-

arrived at the scene of the collision on December 30, 2022, she was aware that Laney Hudson was critically injured and/or killed." *Am. Compl.* ¶¶141-42. Plaintiffs further allege Ms. Slone "suffered serious emotional distress as a direct result of witnessing critical injury and/or death to Laney Hudson." *Id*. ¶145.

Assuming, as this Court must, the truth of these allegations in the light most favorable to Plaintiff, the Court finds there is a plausible claim that Ms. Slone witnessed her daughter's death, which is what Plaintiffs would have to show at trial in order to prove her claim under *Heldreth*. Although the Court is aware that Defendants maintain Ms. Hudson died instantly, it raises a factual issue that the Court will not resolve for purposes of this motion.[7] Therefore, the Court denies the motions as to the NIED claim.

### F.
### Statutory Immunity
### Deputy Racer

Deputy Racer further argues that he is entitled to statutory immunity on Count II for Negligence, Count III for Failure to Render Aid, Count IV for Wrongful Death, and Count IX for Negligent Infliction of Emotional Distress pursuant to West Virginia's Governmental Torts Claims and Insurance Reform Act. In relevant part, West Virginia Code § 29-12A-5(b) provides:

> (b) An employee of a political subdivision is immune from liability unless one of the following applies:
>
> (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
>
> (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or

---

[7] The Court is aware that Defendants maintain Ms. Hudson died instantly, which necessarily would mean Ms. Slone did not witness her death. However, whatever Ms. Slone did or did not see is a matter best reserved to decide after discovery.

      (3) Liability is expressly imposed upon the employee by a provision of this code.

W. Va. Code § 29-12A-5(b)(1)-(3).

As previously discussed, Plaintiffs assert Deputy Racer was acting within the scope of his employment when the accident occurred, while the County Commission and Sheriff Zerkle maintain he was not. To the extent he was acting within the scope of his employment, the Court agrees with Deputy Racer that he is entitled to statutory immunity as to the pure and simple negligence claim set forth in Count II. Therefore, the Court grants Deputy Racer's motion as to Count II in his official capacity.

However, as to Plaintiffs' allegations of failing to render aid, wrongful death, and NIED, there is no immunity if Deputy Racer was acting within the scope of his employment and his official duties and there is a statute that expressly imposes liability upon Deputy Racer or if his alleged acts or omissions were in a wanton or reckless manner. In Count III for failing to render aid, Plaintiffs expressly assert Deputy Racer violated his statutory duties to render aid under West Virginia Code §§ 17C-4-1 and 17C-4-3(b) and, therefore, he is statutorily liable pursuant to West Virginia Code § 55-7-9. Consequently, at this point, the Court declines to find that Deputy Racer is statutorily immune pursuant to § 29-12A-5(b)(3) for failing to render aid.

As to Plaintiffs claims for wrongful death and NIED, Plaintiffs allege Deputy Racer's acts and omissions were conducted in a reckless manner. To the extent Plaintiff ultimately may be able to prove recklessness, the Court finds a waiver of statutory immunity exists pursuant to West Virginia Code § 29-12A-5(b)(2). As there is a genuine issue of material

fact as to whether Deputy Racer acted recklessly, the Court denies the motion to dismiss the wrongful death and NIED claims as premature. *See Webb v. Raleigh Cty. Sheriff's Dep't,* 761 F. Supp. 2d 378, 394 (S.D. W. Va. 2010) ("Because genuine issues of material fact exist as to the events leading up to and directly after the shooting, summary judgment based on the deputies' entitlement to immunity under West Virginia Code § 29–12A–5(b) is not appropriate.").

Deputy Racer further makes a cursory claim that Plaintiffs' claim for punitive or exemplary damages and non-economic damages above $500,000 should be dismissed against him pursuant to West Virginia Code §§ 29-12A-7(a) and (b)[8] and 29-12A-9(a).[9] However, as

---

[8]West Virginia Code § 29-12A-7(a) and (b) provides:

> Notwithstanding any other provisions of this code or rules of a court to the contrary, in an action against a political subdivision or its employee to recover damages for injury, death, or loss to persons or property for injury, death, or loss to persons or property caused by an act or omission of such political subdivision or employee:
>
> (a)    In any civil action involving a political subdivision or any of its employees as a party defendant, an award of punitive or exemplary damages against such political subdivision is prohibited.
>
> (b) There shall not be any limitation on compensatory damages that represent the economic loss of the person who is awarded the damages. However, damages awarded that arise from the same cause of action, transaction or occurrence, or series of transactions or occurrences that represent noneconomic loss shall not exceed $500,000 in favor of any one person. The limitation on damages that do not represent the economic loss of the person who is awarded the damages provided in this subsection does not apply to court costs that are awarded to a plaintiff or to interest on a judgment rendered in favor of a plaintiff in an action against a political subdivision or its employees.

W. Va. Code Ann. § 29-12A-7(a) and (b).

this Court recently stated in *O.W. v. Cabell Cty. Bd. of Educ.*, Civ. Act. No. 3:24-0070, 2024 WL 3445489, at *9 (S.D. W. Va. July 17, 2024), § 29-12A-7's restrictions on punitive damages do not apply to individual defendant employees of political subdivisions. Thus, the Court denies Deputy Racer's argument.

## G.
## Qualified Immunity

Deputy Racer next argues that, to the extent the Court finds Plaintiffs have adequately alleged state actions against him, he is entitled to qualified immunity. Under the doctrine of qualified immunity, government officials are protected "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitz*gerald, 457 U.S. 800, 818 (1982) (citations omitted). As the Supreme Court has explained, qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.' " *District of Columbia v. Wesby*, 583 U. S. 48,  63 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Here, as this Court previously indicated, it was well established at the time of this accident under the Fourth Circuit's holding in *McKinney* that excessive speed, barring any legal authority or official justification, can present a knowing disregard for the law and pose a substantial risk of serious

---

[9]West Virginia Code § 29-12A-9 provides:

> (a) If a policy or contract of liability insurance covering a political subdivision or its employees is applicable, the terms of the policy govern the rights and obligations of the political subdivision and the insurer with respect to the investigation, settlement, payment and defense of suits against the political subdivision, or its employees, covered by the policy. The insurer may not enter into a settlement for an amount which exceeds the insurance coverage.

W. Va. Code Ann. § 29-12A-9(a).

harm to others. Thus, the Court denies Deputy Racer's argument he is entitled to qualified immunity.

## H.
## Failure to Render Aid

Notwithstanding his immunity arguments, Deputy Racer further argues that Plaintiffs have failed to sufficiently allege that he did not render reasonable and proper aid pursuant to West Virginia Code §§ 17C-4-1 and 17C-4-3(b). West Virginia Code § 17C-4-1(a) provides, in relevant part:

> [t]he driver of any vehicle involved in a crash resulting in the injury . . . of any person shall immediately stop such vehicle at the scene of the crash or as close to the scene as possible and return to and remain at the scene of the crash until he or she has complied with the requirements of § 17C-4-3 of this code.

W. Va. Code § 17C-4-1(a), in part. West Virginia Code § 17C-4-3(b) imposes a duty upon the driver and provides, in part:

> [t]he driver of any vehicle involved in a crash resulting in injury to or death of any person, if physically able to do so, shall render to any person injured in such crash reasonable assistance, including the carrying, or the making arrangements for the carrying, of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person.

W. Va. Code § 17C-4-3(b), in part. In the Amended Complaint, Plaintiff asserts Deputy Racer violated his duty under these statutes by failing to render any aid to Ms. Hudson, by relying upon a bystander to call 911, and by failing to transport Ms. Hudson in his vehicle to the nearby emergency room. *Am. Compl.* ¶¶79-85. Plaintiffs assert these acts and/or inactions were unreasonable under the circumstances and constitute deliberate indifference, giving rise to

liability under West Virginia Code § 55-7-9.[10] *Id.* ¶¶86, 88, 91. While Deputy Racer argues he remained at the scene and assisted in arranging for emergency medical assistance for Ms. Hudson, the Court finds there are factual disputes about what Deputy Racer did, did not do, and whether Ms. Hudson died instantly upon impact, making the situation hopeless. Therefore, at this point, the Court denies Deputy Racer's argument that Plaintiffs failed to sufficiently allege a claim that he did not render Ms. Hudson aid.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS, in part,** and **DENIES, in part,** Deputy Racer's Motion to Dismiss the First Amended Complaint (ECF No. 34) and **GRANTS, in part,** and **DENIES, in part,** the joint Motion to Dismiss by Defendants Cabell County Sheriff's Office, Sheriff Chuck Zerkle and the Cabell County Commission. ECF No. 41. In addition, consistent with the Memorandum Opinion and Order, the Court **DISMISSES** the Cabell County Sheriff's Office as a defendant in this matter.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        September 26, 2024

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[10]West Virginia Code § 55-7-9 states, in part: "Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation[.]"